Opinion issued December 22, 2009




 


 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-09-00211-CR

____________


WILLIAM MICHAEL FERGUSON, Appellant


v.


THE STATE OF TEXAS, Appellee






On Appeal from the 294th District Court

Van Zandt County, Texas

Trial Court Cause No. CR08-00117







O P I N I O N

 Following a bench trial, the court convicted appellant, William Michael
Ferguson, of possession of a controlled substance in Penalty Group 1, namely,
cocaine, in an amount less than one gram. See Act of May 29, 1993, 73rd Leg., R.S.,
ch. 900, § 2.02, 1993 Gen. Law 3586, 3706-07 (amended 2009) (current version at
Tex. Health & Safety Code Ann. § 481.115(a), (b) (Vernon Supp. 2009)). (1) The
court assessed punishment at six years in prison and a fine of $500. On appeal,
appellant argues that the evidence is legally and factually insufficient to support his
conviction. We affirm.

Background


 On the night of January 31, 2008, a patrol officer stopped the white van in
which appellant was a passenger. Officer Heath Burton, with the City of Canton
Police Department, stopped the van because the license plate was not illuminated and
not visible within 50 feet, as required by state law. Once the van stopped, Officer
Burton determined that the license plate was registered to a different vehicle. 

 There were three people in the van: a male driver (Danguah Ohene-Bekoe), a
female (Crystal Gail Ferguson) in the passenger seat, and appellant sitting on the floor
in the back of the van, directly behind the driver and passenger seats. The back of the
van did not have a seat, and there were clothes scattered across the floor.

 When asked where they were driving, appellant, Ohene-Bekoe and Ms.
Ferguson gave conflicting stories. The video taken from Officer Burton's dashboard
camera was admitted at trial and played for the court. The tape shows that Ohene-Bekoe told officers that they were coming from Dallas, where they were "just hanging
out." Ms. Ferguson told officers that she lived in Fruitsvale some of the time, they
were on their way to her mother's home in Fruitsvale, and that they lived in Dallas. 
When officers asked appellant what they were doing in Dallas, he responded, "We
were just visiting-- We live there." Officer Burton said that the occupants of the
vehicle were "extremely nervous," did not make eye contact, and were "fidgety." 
Ohene-Bekoe stated he owned the van and indicated that there was nothing illegal in
the vehicle, but he refused to consent to a search. Because of the conflicting stories,
nervous behavior, and refusal to consent to a search, Officer Burton called Sergeant
Hall with the K-9 unit to perform an open-air search around the vehicle. 

 When the K-9 unit arrived and conducted the open-air search, the dog alerted
on the vehicle more than once. During the resulting search, officers found a plastic
bag containing a white powder the officers believed to be cocaine, four syringes, and
two glass crack pipes. The plastic bag was found underneath some clothing on the
floor in the rear portion of the van, where appellant had been sitting. The plastic bag
and its contents were sent for testing, and a chemist determined the bag contained
cocaine. Appellant affirmatively stated that the baggie in the van did not belong to
him, and he had no knowledge of any drugs in the van.

 The syringes and pipes were found in the back of the front passenger seat,
stuffed underneath the fabric. The syringes and pipes were located in an area
accessible to someone in the back of the van, and appellant was next to the back of
this seat when the van was stopped. Officer Burton testified that the pipes, the
syringes, and the bag containing cocaine were located closer to appellant than anyone
else in the vehicle.

 Despite the fact that the case was tried to the bench, the court separated the
guilt and punishment phases of trial. During the guilt/innocence stage of the trial to
the bench, appellant testified that both he and his wife had had a drug problem in the
past and he admitted that he was "strung out on heroin for eight years." Appellant
also admitted he stole from family and stores to support his drug habit. Appellant
testified to several prior convictions, including multiple convictions for possession
of a controlled substance. However, he stated that his pattern of drug use ended when
he went into state jail in 2006 for six months and "started getting serious" about
attending church. Appellant testified that he has not been involved with drugs since
the time he was released from jail in October of 2006. 

 Appellant testified that he met Ohene-Bekoe about a month prior to the
incident, and the two began working together operating a curb painting business. 
Appellant described Ohene-Bekoe as "socially and mentally restricted a little bit," but
said they were able to work well together. Appellant testified that his prior
experience with drugs led him to believe that Ohene-Bekoe was on drugs, explaining
"I'm an ex-addict, so I recognize all the signs." Appellant testified that Ohene-Bekoe
"would seem like he was on something sometimes." However, appellant stated he
had no knowledge that any contraband was located in the vehicle. Appellant claimed
that he and his wife were merely getting a ride with Ohene-Bekoe because he and his
wife were unable to drive.

 On December 5, 2008, the court announced that it found appellant guilty of
possession of a controlled substance in Penalty Group 1. The court set a sentencing
hearing for four days later on December 9, 2008, to allow for the preparation of a
presentence investigation (PSI) report.

 During his PSI interview, appellant said that he had smoked cocaine with
Ohene-Bekoe and Ms. Ferguson on the day he was arrested. This statement was
included in the PSI report, which was presented to the court at the "sentencing"
hearing. At the "sentencing" hearing, appellant testified that he had used cocaine on
the day he was arrested. Sufficiency of the Evidence

 Appellant contends the evidence is legally and factually insufficient to support
his conviction.

A. Standard of Review

 In an appeal from a bench trial, a trial court's findings of fact have the same
weight as a jury's verdict. See, e.g., Walmer v. State, 264 S.W.3d 114, 116-17 (Tex.
App.--Houston [1st Dist.] 2007, no pet.) (applying the same standard of review
applicable to a jury's verdict to a sufficiency review of bench trial findings); see also
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Daniel v. Falcon Interest
Realty Corp., 190 S.W.3d 177, 184 (Tex. App.--Houston [1st Dist.] 2005, no pet.)
("In an appeal of a judgment rendered after a bench trial, the trial court's findings of
fact have the same weight as a jury's verdict, and we review the legal and factual
sufficiency of the evidence used to support them, just as we would review a jury's
findings."). 

 In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime's essential elements beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009). The standard is the same for both direct and circumstantial
evidence cases. Laster, 275 S.W.3d at 517-18. We do not resolve any conflict of
fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999).

 In our factual-sufficiency review, we view all of the evidence in a neutral light. 
Laster, 275 S.W.3d at 518. We will set aside the verdict only if (1) the evidence is
so weak that the verdict is clearly wrong and manifestly unjust or (2) the proof of
guilt is against the great weight and preponderance of the evidence. Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see Laster, 275 S.W.3d at 518. Under the
first prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been the fact-finder. Watson v. State, 204 S.W.3d 404,
417 (Tex. Crim. App. 2006). Under the second prong of Johnson, we also cannot
declare that a conflict in the evidence justifies a new trial simply because we disagree
with the fact-finder's resolution of that conflict. Id. Before finding that evidence is
factually insufficient to support a verdict under the second prong of Johnson, we must
be able to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the fact-finder's determination. Id. In our
factual-sufficiency review, we must also discuss the evidence that, according to
appellant, most undermines the fact-finder's determination. Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).

 The trier of fact is the ultimate judge of credibility. Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008); see Tex. Code Crim. Proc. Ann. art.
36.13 (Vernon 2007), art. 38.04 (Vernon 1984). The fact-finder alone determines the
weight to be to given contradictory testimonial evidence because that determination
depends on the fact-finder's evaluation of credibility and demeanor. Lancon, 253
S.W.3d at 706. The fact-finder may choose to believe all, some, or none of the
testimony presented. Id. at 707.


B. Unlawful Possession of a Controlled Substance

 A person commits an offense if he knowingly or intentionally possesses less
than one gram of cocaine. Tex. Health & Safety Code Ann. § 481.115(a), (b). 
When an accused is charged with unlawful possession of cocaine, the State must
prove (1) the defendant exercised actual care, custody, control, or management over
the contraband and (2) the accused knew the object he possessed was contraband. 
Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). 

 The law does not require exclusive possession of the drug. Roberson v. State,
80 S.W.3d 730, 735(Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) (citing Harvey
v. State, 487 S.W.2d 75, 77 (Tex. Crim. App. 1972)). "The mere fact that a person
other than the accused might have joint possession of the premises does not require
the State to prove that the defendant had sole possession of the contraband, only that
there are affirmative links between the defendant and the drugs such that he, too,
knew of the drugs and constructively possessed them." Poindexter, 153 S.W.3d at
412 (emphasis in original). 

 When the accused is not in exclusive possession of the place where the
substance is found, it cannot be concluded that he had knowledge of and control over
the contraband unless there are additional independent facts and circumstances that
affirmatively link him to the contraband. Poindexter, 153 S.W.3d at 406. Evidence
that affirmatively links an accused to the substance suffices for proof that he
possessed it knowingly. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995). The affirmative link may be shown by direct or circumstantial evidence, but
in either case it must establish, to the requisite level of confidence, that the accused's
connection with the drug was more than just fortuitous. Poindexter, 153 S.W.3d at
405-06. As explained in Poindexter, "The 'affirmative links rule' is designed to
protect the innocent bystander from conviction based solely upon his fortuitous
proximity to someone else's drugs." Id. at 406. 

 Mere presence at the location where drugs are found is thus insufficient, by
itself, to establish actual care, custody, or control of those drugs. Evans v. State, 202
S.W.3d 158, 162 (Tex. Crim. App. 2006). However, presence or proximity, when
combined with other links, may well be sufficient to establish that element beyond
a reasonable doubt. Id. It is not the number of links that is dispositive but, rather, the
logical force of all of the evidence. Id. The following non-exclusive affirmative links
are recognized as sufficient, either singly or in combination to establish a person's
connection to contraband: 

(1) the defendant's presence when a search is conducted; (2) whether the
contraband was in plain view; (3) the defendant's proximity to and the
accessibility of the narcotic; (4) whether the defendant was under the
influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive
gestures; (9) whether there was an odor of contraband; (10) whether
other contraband or drug paraphernalia were present; (11) whether the
defendant owned or had the right to possess the place where the drugs
were found; (12) whether the place where the drugs were found was
enclosed; (13) whether the defendant was found with a large amount of
cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt.


Id. at 162 n.12.

C. Evidence to be Considered

 In its brief, the State asserts that we should consider all evidence presented at
the bench trial, including evidence presented during the "sentencing" hearing, in our
sufficiency review. The State argues that bifurcation only applies to jury trials and,
therefore, even when bench trials are conducted as if they were bifurcated, they are
truly unitary.

 "[I]n a trial without a jury on a plea of not guilty, evidence that is introduced
at the 'punishment' stage of trial is considered in deciding the sufficiency of the
evidence to prove guilt." Barfield v. State, 63 S.W.3d 446, 450 (Tex. Crim. App.
2001). The Court in Barfield arrived at this holding by recognizing that "[t]he
bifurcated-trial procedure . . . is not authorized in a trial without a jury." Id. at 499;
see Tex. Code Crim. Proc. Ann. art. 37.07, § 2(a). Therefore, even if a trial court
employs procedures characteristic of bifurcation, a bench trial remains a unitary trial
punctuated by a recess in the middle. Barfield, 63 S.W.3d at 450-451.

 In his reply brief, appellant attempts to distinguish the present case from
Barfield. Specifically, appellant argues that this case can be distinguished because
the trial court told the parties that a "sentencing" hearing would be held on a later
date. This, however, is the very type of procedure that Barfield addressed. 

 Barfield noted that courts frequently bifurcate bench trials and re-convene
"sometimes months later" with a "penalty stage." Id. at 450. The Court noted that
"[a]lthough a bifurcated trial without a jury is not authorized, it is not necessarily a
harmful error." Id. "[T]he unauthorized 'bifurcation' of a trial without a jury does
not mean that a genuinely separate punishment phase exists." Id. The Court
explained, "the decision of the court in a unitary trial is not fixed until it renders
judgment on guilt and punishment after all the evidence and arguments have been
heard." Id. at 451.

 Appellant also argues that Barfield did not consider whether evidence that is
inadmissible in determination of guilt could nonetheless be used as evidence in a
determination of sufficiency of the evidence. Specifically, appellant argues that
extraneous offenses are normally inadmissible to prove guilt and that it would be
unfair to consider extraneous offenses brought out in the "punishment phase" to
support the finding of guilt. However, we need not address this contention because
appellant testified to his prior convictions during the "guilt/innocence" phase of his
trial. 

 The evidence from the "sentencing" hearing that is relevant in our links
analysis is appellant's testimony that he used cocaine on the day of the offense, which
is contrary to his prior testimony. (2) In a footnote in his brief, appellant appears to
allege coercion by pointing to instructions given by the judge when ordering the PSI. (3) 
We do not find the judge's comments to be inconsistent with the Barfield procedure. 
See generally Barfield, 63 S.W.3d 446.

 Because we are bound by the Texas Court of Criminal Appeals' holding in
Barfield, in deciding the sufficiency of the evidence to prove guilt, we consider all
evidence presented at the bench trial, including evidence that is introduced at the
"punishment" portion of trial. See id. at 450 ("[I]n a trial without a jury on a plea of
not guilty, evidence that is introduced at the 'punishment' stage of trial is considered
in deciding the sufficiency of the evidence to prove guilt"). 

D. Legal Sufficiency

 Appellant contends that the evidence is legally insufficient because the State
did not establish the requisite link between himself and the controlled substance. 
Specifically, appellant argues that a motor vehicle passenger's close proximity to
"hidden drugs" is not legally sufficient to support a conviction for possession of a
controlled substance. Appellant asserts that he was found guilty only because of his
location in the vehicle at the time of the traffic stop by police.

 Because appellant was not in exclusive possession of the motor vehicle where
the cocaine was found, independent facts and circumstances must have been
established at trial that link appellant to the cocaine. See Evans, 202 S.W.3d at 162. 
While it is true that mere presence at the location where drugs are found is
insufficient, alone, to establish actual care, custody, or control of those drugs,
appellant fails to mention the other evidence linking him with the controlled
substance. See id. 

 Several of the non-exhaustive factors mentioned in Evans are present in this
case. See id. The facts tending to connect appellant with the cocaine include: 

 (1) Appellant was present at the scene when the search of the vehicle was
conducted. Appellant was riding in the vehicle when it was stopped and
searched. 


 (2) Drug paraphernalia was discovered during the search. Four syringes
and two glass pipes used for smoking crack cocaine where found during the
search.

 

 (3) The location where the drugs were found was enclosed. The
contraband was found in an enclosed space, the passenger compartment of the
van in which appellant was riding. Appellant had gotten a ride with Ohene-Bekoe from Dallas, and the van was stopped in Canton. Thus, appellant had
been in the enclosed space with the drugs for at least the travel time between
Dallas and Canton.

 

 (4) The contraband was located in close proximity to appellant and was
conveniently accessible to him. Officer Burton testified that the cocaine,
syringes, and pipes were located in an area closest and accessible to appellant. 
See Robinson v. State, 174 S.W.3d 320, 326 (Tex. App.--Houston [1st Dist.]
2005, pet. ref'd) (in order for contraband to be conveniently accessible, it must
be "within the close vicinity of the accused and easily accessible while in the
vehicle so as to suggest the accused had knowledge of the contraband and
exercised control over it").


 (5) Appellant's conduct indicated a consciousness of guilt. The video taken
from the dash of Officer Burton's patrol car was played at trial, and the fact
finder had the opportunity to view appellant's behavior. Officer Burton
testified that all of the occupants of the vehicle, including appellant, were
nervous and shaking. Officer Burton testified that the occupants of the vehicle
would not look at him in the eyes as they were speaking. The behavior
described by Officer Burton could reasonably be determined by the fact-finder
to be evidence of consciousness of guilt.


 (6) Appellant was under the influence of cocaine at the time he was
arrested. Contradicting his previous trial testimony that he had no knowledge
of the cocaine in the vehicle, appellant testified during the sentencing portion
of the trial that he used cocaine with Ohene-Bekoe and Ms. Ferguson on the
day he was arrested. Appellant admitted that he lied under oath when he
testified that he stopped using drugs in 2006.


 Although some of the Evans factors are not present, it is well established that
the absence of certain links do not weigh against those that are present. See Evans,
202 S.W.3d at 162; Robinson, 174 S.W.3d at 326. 

 In support of his legal sufficiency points, appellant relies on Roberson v. State,
80 S.W.3d 730 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd), where we found
evidence insufficient to support a conviction for possession. Appellant asserts that
the facts of his case are similar to the facts in Roberson. In Roberson, the defendant
was the driver of the vehicle in which police discovered cocaine, but the only other
evidence linking the defendant to the cocaine was his denial of a close relationship
to the other occupants of the vehicle, while strong links existed connecting the
passengers to the drugs. Id. In Roberson, the defendant was "composed, gave no
resistance, did not appear to be intoxicated or under the influence of drugs, and had
a pleasant personality" throughout the traffic stop, while one of the passengers
appeared to be "under the influence of something" and the other passenger had drugs
on his person. Id. at 733-34. The instant case is distinguishable from Roberson
because there are several links connecting appellant to the drugs, including
appellant's admission that he used cocaine with the two other passengers in the car
the day of the arrest and the contraband was found in a location more accessible to
appellant than to any other passenger in the car.

 Appellant also cites Lassaint v. State, 79 S.W.3d 736 (Tex. App.--Corpus
Christi 2002, no pet.), and Kyte v. State, 944 S.W.2d 29 (Tex. App.--Texarkana
1997, no pet.), in which the reviewing courts concluded that the evidence was
insufficient to support the appellants' possession convictions. The facts of the cited
cases are distinguishable, particularly in that none involved an admission by the
appellant that he used drugs earlier on the day of the arrest. In Lassaint, the narcotics
were found in a speaker box in a car that was not occupied by the appellant. 79
S.W.3d at 743. There was no evidence that Lassaint ever exercised any ownership
or control over the car in which the narcotics were located or even knew of the
existence of the speaker box where the narcotics were located. Id. The narcotics
were neither in close proximity nor conveniently accessible to Lassaint. Id. at 744. 
Here, the narcotics were discovered under a pile of clothes where appellant was
sitting, and appellant admitted to using cocaine with the other two passengers in the
vehicle earlier in the day. In Kyte, the narcotics were found under the floor mat,
hidden from view, in a car that a garage owner had temporarily loaned to Kyte while
he repaired her truck. 944 S.W.2d at 33. In the present case, appellant was in the van
belonging to his business partner and admitted he used cocaine with the two other
passengers on the day he was arrested.

 In his brief, appellant points out that Officer Burton said that appellant would
not have been arrested or tried if the driver had admitted ownership of the drugs. 
Appellant points to the statement to argue that there was insufficient evidence linking
him to the drugs, as opposed to the other occupants of the vehicle. However,
appellant's reliance on the Officer's statement is misplaced because the law does not
require the State to prove sole, exclusive possession of the drug. See Roberson, 80
S.W.3d at 735. Rather, the State's burden is to show that "there are affirmative links
between the defendant and the drugs such that he, too, knew of the drugs and
constructively possessed them." Poindexter, 153 S.W.3d at 412. 

 Viewed in the light most favorable to the fact-finder's determination, the
evidence shows that (1) appellant was present at the scene when the search of the
vehicle was conducted, (2) drug paraphernalia was discovered during the search, (3)
the location where the drugs were found was enclosed, (4) the contraband was located
in close proximity to appellant and was conveniently accessible to him, (5)
appellant's conduct indicated a consciousness of guilt, and (6) appellant was under
the influence of cocaine at the time he was arrested, as he admitted he used cocaine
earlier that day. The fact-finder could have reasonably inferred, from the cumulative
force of the evidence, that appellant exercised actual care, custody, or control of the
cocaine. See Evans, 202 S.W.3d at 166 (concluding that evidence, "when viewed in
combination and its sum total, constituted amply sufficient evidence"); Robinson, 174
S.W.3d at 326 (affirming possession conviction of front-seat passenger in truck where
cocaine was located in factory compartment in back wall of truck, and noting that
cocaine was within vicinity and easily accessible to passenger). We conclude that the
evidence is sufficient for a rational trier of fact to have found the elements of
possession of a controlled substance beyond a reasonable doubt. See Tex. Health
& Safety Code Ann. § 481.115(a), (b).

 We overrule appellant's first issue.

E. Factual Sufficiency

 In his second point, appellant argues that the evidence is factually insufficient
to sustain his conviction. Specifically, appellant contends that after considering
"missing links," the officer's statement about not arresting all of the van's occupants
if one of them claimed ownership of the drugs, and the "trace" amount of cocaine, the
guilty finding is factually insufficient.

 In support of his factual insufficiency argument, appellant points to missing
links. Appellant's analysis is flawed because, as Evans instructs, the enumerated
factors are merely links which "Texas courts have recognized as sufficient, either
singly or in combination, to establish a person's possession of contraband." Evans,
202 S.W.3d at 162 (emphasis added). Appellant's argument treats the links as a
check list, as if the number of factors present necessarily correlates with the strength
of a case. This type of reasoning misconstrues the links analysis. Rather than giving
equal weight to each factor listed, we are to look at the "logical force of all of the
evidence" together. See id. Pointing out possible links that were not established at
trial does not negate the links that were established. Lair v. State, 265 S.W.3d 580,
588 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd) (citing Evans, 202 S.W.3d at
164 (rejecting court of appeals' determination of legal insufficiency that was based
in part on recitation of links that "did not exist in this case")).

 Again, appellant points to the statement made by the police officer that he
would not arrest everyone if someone claimed ownership of the drugs. But the fact
that the officer was asking someone to claim ownership of the drugs does not mean
there was insufficient evidence linking appellant to the drugs. See Roberson, 80
S.W.3d at 735 (holding that proof of sole possession is not necessary).

 Appellant argues that only a "trace" amount of drugs were found and that it was
not a usable amount. However, there is no requirement that one must possess a
usable amount of controlled substance or that the substance be visible to the naked
eye. Joseph v. State, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). Nevertheless,
appellant argues that, because there was only a trace amount, "[i]t follows that the
original contents of the baggie had either been consumed or discarded at a time
previous to the search." He goes on to argue that there is no evidence that appellant
was under the influence of drugs or that he had used the drugs in the bag. Appellant
misstates the record; appellant himself testified that he used cocaine on the day he
was arrested with the two other passengers in the vehicle. This testimony leads to the
logical inference that appellant used the cocaine that was found in the vehicle. 

 Appellant acknowledges that Officer Burton testified that all occupants of the
van were extremely nervous but argues that nervousness is a tenuous link. It is true
that courts have recognized that "nervousness is a tenuous link to the contraband
because most people are somewhat nervous when confronted by a police officer." 
Jenkins v. State, 76 S.W.3d 709, 713 n.3 (Tex. App.--Corpus Christi 2002, pet.
ref'd). However, the idea that some links are stronger than others is subsumed in our
links analysis which considers the "logical force of all of the evidence." See Evans,
202 S.W.3d at 162 (emphasis added) (holding it is "not the number of links that is
dispositive, but rather the logical force of all of the evidence").

 Appellant argues that "nervousness is the only other possible evidence," other
than presence and proximity to the drug, and therefore, the evidence is factually
insufficient. As with his legal sufficiency argument, appellant fails to mention the
totality of the evidence connecting appellant to the possession of the cocaine. 

 In deciding whether the evidence is sufficient to link the defendant to
contraband, the trier of fact is the exclusive judge of the credibility of the witnesses
and the weight to be given to their testimony. Poindexter, 153 S.W.3d at 406. Here,
the fact-finder was able to make a discriminating assessment of the facts, and found
that the State proved appellant's possession of cocaine beyond a reasonable doubt. 
 When viewed in a neutral light, the evidence shows that (1) appellant was
present at the scene when the search of the vehicle was conducted, (2) drug
paraphernalia was discovered during the search, (3) the location where the drugs were
found was enclosed, (4) the contraband was located in close proximity to appellant
and was conveniently accessible to him, (5) appellant's conduct indicated a
consciousness of guilt, and (6) appellant was under the influence of cocaine at the
time he was arrested, as he admitted he used cocaine earlier that day. The evidence,
when viewed in combination and its sum total, constituted sufficient evidence
connecting appellant to the actual care, custody, control or management of the
cocaine found in the area of the van in which he was sitting. See Evans, 202 S.W.3d
at 166. Weighed in a neutral light, the evidence is not so weak that the verdict is
clearly wrong and unjust. Laster, 275 S.W.3d at 518. Also, there is no objective
basis in the record to conclude that the great weight and preponderance of the
evidence contradicts the jury's verdict. Watson, 204 S.W.3d at 417. We hold the
evidence is factually sufficient to support the conviction for possession of a
controlled substance. See Tex. Health & Safety Code Ann. § 481.115(a), (b). 

 We overrule appellant's second issue.

Conclusion

 We affirm the judgment of the trial court.

 

 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Keyes, Alcala and Hanks.

Publish. See Tex. R. App. P. 47.2(b). 
1. The 81st Texas Legislature amended Texas Health & Safety Code Section 481.115, effective
September 1, 2009. The amendments do not affect the disposition of this case. 
2. In his reply brief, it is unclear if appellant is arguing that his testimony that he used cocaine
on the day in question is inadmissible extraneous offense evidence under Rule 404(b) of the
Texas Rules of Evidence. We note that evidence of his using cocaine on the day he was
arrested for possession of cocaine is admissible in the "guilt" stage of trial under Rule 404(b)
because it shows knowledge of the presence of cocaine in the vehicle and intent to possess
the cocaine in the vehicle. Tex. R. Evid. 404(b).
3. Specifically, the trial judge said to appellant's trial counsel, "if you'll just inform your client
that he needs to cooperate with -- in filling out the paperwork or answering their questions
regarding that."